Thank you, and good afternoon. I'm Geri Greene. I represent Mr. Hunter, appellant in this matter. Your Honors, unless the Court would like me to recite the facts in this matter, I'm prepared to just dive into the legal issues. Just dive in. Because time is short. And at this point, the appellant would be submitting on the cartilage Fourth Amendment issue, not waste the Court's time in discussing it further. I think the two issues that really need to be discussed here are the question regarding the Fourth Amendment issues related to the arrest and the sentence enhancement, the four points for the firearm. As to the arrest, this case presents interesting factual issues and legal issues. And I'm sorry I didn't have an opportunity to bring the Court's attention to a recently decided case of University of the United States v. Smith, a Ninth Circuit case decided in February of this year with a 633-Fed 3889 citation. That case is interesting, and it just illuminates some of the issues here, so I'm alerting the Court to it. But the question becomes one of whether or not, when a seizure occurs and whether the seizure that occurs is from an appropriate show or a show of authority. Why that case is at all interesting here, I think, is because the show of authority happens, the actual show of authority happens so late in the game. Officer Fessmeier arrived on and saw this person walking on the street. He doesn't say, stop police. He doesn't make any movement to have the person stop. He actually opens his car door and looks under it for his flashlight or something that fell out the door. And then he follows the person without saying anything as the person takes off, I guess, and runs down the street and goes into the backyard of the house where he's ultimately arrested. Then Officer Fessmeier comes around the corner, runs in, says, you know, stop police, gun drawn. Guy, Mr. Hunter, complies, and he's down on the ground arrested. There's granted evidence on both, you know, evidence coming in about what happened in the first, in those first few instances between stop police and getting him down on the ground and arresting him, but Officer Fessmeier admitted and testified that he arrested him. The question becomes, what did he arrest him for? And did he have probable cause to indeed arrest him? There was not the connection between the stolen vehicle and the car chase and this particular person, and there wasn't a show of authority. So, and because the crime of being an ex-felon in possession of a gun requires the identity of the ex-felon to determine whether or not they are indeed, there is indeed a crime because possession of a gun in and of itself or having a gun in a bush near you is not sufficient to be a crime in and of itself, I would argue that the identification of Mr. Hunter and any information that came out of that arrest should be suppressed. But ---- Well, they ran a record check at the time, right? They ran a record check after he was arrested, handcuffed, and put in the car. So the question really is one of timing. At the point they had him in the car with his identification, at that point they have probable cause to arrest him. But at the point where they throw him on the ground and arrest him, I'm not, I don't see the nexus between any probable cause to arrest and this man. Well, what's your ---- let me ask you a question, Ms. Green. Was this a terrorist stop? He looked like he was fleeing the police, at least according to the district court, made that finding after the evidentiary hearing, that he seemed to match the description that was given. He seemed to be in the place where the person who was a suspect from the stolen car would have been, and also the time that this occurred, which was 345 in the morning, seems like the officers had reason to believe that he was that person. He was similar enough in description. And then on top of that, when he saw the police, according to the findings that the district court made, he tried to flee. I would ---- I'm not sure the district court came to the determination that the man on the street that was seen on the street by Officer Fessmeyer was indeed the man that they had seen fleeing. He was a man in an area that had ---- they had lost sight of that person. They had searched in that area prior to Officer Fessmeyer going and finding this person. And this person is on his next round, this person is seen walking down the street. And the like, looking like or resemblance of wearing a black hoodie and being an African-American man is rather vague. So it really comes down to ---- But he's in the high crime area in the same area where the car dead-ended. He sees a police car and he starts to flee. So before you get to the house, I guess your position was they couldn't have even stopped him then? Well, I think ---- On a Terry stop? Well, I think the problem in the analysis ---- And they could have stopped him on a Terry stop. For the car? For the stolen ---- for the car chase? I do not believe so, because the car chase that occurred someplace some ways away, the person was not identified at the time, although the officer, which comes out later, the officer that was chasing him knew him, didn't say ---- knew Mr. Hunter, but didn't say over the radio it was Mr. Hunter. The person who jumps over the fence and takes off is ---- view is lost. Officers go to this area at Manual Court, look for the person who jumped the fence, do not find him. And sometime later, after they track down the driver, after they come ---- Officer Vestmeyer decides, hmm, maybe I'll go look again. He sees this gentleman walking down the street. So I'm not sure at that point they had enough for a Terry stop. There's not enough nexus to the car. There wasn't enough nexus. They had already looked in that area, didn't find him. This is a residential area. People walk down the street. Right, but he's the only one. And he matches the description. And he runs when the officer approaches. And so why isn't Wardlow dispositive? Well, because he was not ---- he looks ---- he's wearing a black hoodie, and he's African-American in an African-American residential area. So the description, matching the description is insufficient to provide the basis for a Terry stop. The timing, had they seen him earlier when they went the first time when he ran ---- when he jumped over the fence, then I would agree with you. But many minutes later, after searching all over, coming back and finding a man walking down the street, I'm not sure it brings ---- Well, when you say many minutes later, how many minutes later was it? I'm sorry. I don't recall. I think it was about 6, but I could be off. It was enough for ---- You're saying within 6 minutes of the other officer calling and saying or saying that there's been a person he's following, he's fleeting, I guess Officer Fessmeyer was the one who actually stopped him. Is that correct? It was Officer Fessmeyer that stopped the driver, ran after the driver, stopped the driver, left the driver, and then went after other officers had been in this area at Emanuel Court, which is a very small court looking for the person. Right. And then is it Officer Castro or Lopez then that picked up the pursuit at that point in time? Picked up which pursuit? Well, then followed the other, the lead that the officer had given him, and then began looking for the individual that exited the car. I think it was Officer Castro. Is that right? Officer Castro, Officer Fessmeyer is who left the scene of the arrest of the driver. Officer Fessmeyer is who decided even after the search had been pretty much called off to go hunting, he went back to Emanuel Court and he found a man walking down the street who when he, before he said anything, before he did anything, he just drove by and stopped his car. The gentleman ran off. Right. So why isn't fleeing at the sight of a police officer after a crime has been committed enough for a Terry stop? I mean, the Supreme Court basically said that. Well, you know, United States v. Smith talks about that and talks about the need for a show, the fleeing from a show of authority. And the idea that you flee from simply not wanting to engage in a consensual encounter without any show of authority is my issue there. That had Officer Fessmeyer said, stop, I want to talk to you, or made any indication whatsoever that he wanted to talk to this gentleman. Okay. So then we fast forward and he says, stop, put your hands up. That's authority, right? That is authority. And at that point he had looked like he was disposing of something in the bush, or at least that was the officer's reasonable suspicion. So forgetting the earlier part where he happens to drive by and the guy runs, let's just say he's your average citizen out at 345 in the morning and nobody likes to be stopped by the police or even talk to the police. So that was okay. But then when he sees the same guy moments later matching the description, same time, same manual court, et cetera, why wouldn't he have suspicion then to be able to stop him? That's where I think the issue and the discussion should start. And the question being, you're on private property, you walk out of private property, you say stop, and the person walks towards you, turns around, knocks on their door, and then says okay, and they're down on the ground. I think that's how the testimony came in, and Officer Fessmeyer arrested him at that point. Did he have grounds for possibly a Terry stop? Probably. But was that was – but he didn't have grounds for an arrest, and in fact, Officer Fessmeyer arrested him, threw him down on the ground, a bunch of officers jumped around him, handcuffed him on the ground and threw him into the police car before he engaged in any of the investigatory type of Terry stop evaluation. So that being my point. And I think given the time, we should move on to the sentencing guidelines. Your time has expired, but we'll give you a couple minutes for rebuttal. Thank you. Your Honor's – I mean, your time has expired now, so you need to sit down. Oh, my time has expired now? Yes. So you don't want to? Okay. We'll give you some time for rebuttal. Okay. Good afternoon, Your Honors. My name is Joshua Hill. I'm representing the United States in this case. I'd like to begin by clarifying the factual record that the district court heard during the suppression hearing in this case. Ms. Green, our defense counsel, said that it was roughly six minutes between the time the description of the suspect went out over the radio and when Officer Fessmeyer encountered him in his patrol car. I would direct your honors to the cad tape which was supplied in the record in this case. The entire incident was seven minutes long. And I don't know the exact time between the description and the first sighting of Mr. Hunter on the corner, but I know it was not six minutes. It was not that duration between the description and the sighting of the suspect on the street. So this is a case where it's 345 in the morning. It's in East Oakland. The officer testified this is a high crime area. There is a police pursuit of a stolen vehicle. It dead ends in an apartment complex. The driver runs one way. The passenger runs the other way. The officer sees the passenger run, jump over a fence, and at trial the officer testified he knew this area because it was a high crime area. There's frequent drug dealing. That was a frequent escape route when suspects would run from police. So he jumps the fence and the officer radios the description, black male, black hoodie, black jeans, and where he's headed. And Officer Fessmeyer goes to that general area in his patrol car, sees a suspect matching that description, and before he can say word one, the suspect started running. And Officer Fessmeyer, who is by himself, follows him in his patrol car. They come to 9946 B Street, which is the house in this case. Suspect runs, jumps the fence, makes a furtive motion towards the bush, and Officer Fessmeyer draws his gun. Now, nobody threw Mr. Hunter to the ground during this case. Officer Fessmeyer asked him to stop, get his hands up. Mr. Hunter kept banging on the front door, yelling for somebody to get in the house. Eventually he complied, got down by himself. Nobody threw him down. Does that make any difference? Does that make any difference? It's still lawful. Terry stopped at reasonable grounds to investigate the person who's running from the scene. Now, does it make a difference whether he was thrown down? I don't know that it makes a difference for evaluating whether this is a Terry stop, but I think it makes a difference to clarify the record in this case, that there was no sort of unreasonable force used in the detention of Mr. Hunter here. He only drew his gun, right? Yes. The officer drew his gun. So what is your position about the arrest at that point? He gets down on the ground, he cuffs him. He was arrested for what? Our position is that that was not an arrest at that point. That was still part of the Terry stop, and this Court's precedents show that handcuffs can be used during a Terry stop, especially where, as here, a defendant has already demonstrated the intent to evade arrest by running from the police. Now, Officer Festmeyer was by himself at this point, and I think that's an important fact. It wasn't until his backup, so to speak, was able to arrive on the scene after he radioed in that he had a suspect, a potential suspect, at gunpoint, then they were able to handcuff him for safety. So Officer Festmeyer did not approach the suspect by himself because it would not have been safe to do so. He was placed in the handcuffs so that they could proceed with a Terry stop in a safe fashion. I have a question about the enhancement, if you don't mind switching topics. Absolutely. The enhancement for using the gun in connection with the crime of possession I find a bit problematic. And it's different from a trafficking situation where you have a sale imminent or somebody's going to hold drugs for sale and a gun's found in connection. Here, there's nothing beyond mere possession, is there? In terms of the cocaine base that was found, Mr. Hunter, yes. I think the court, district court found and the government conceded this was a personal possession amount. The government made the argument at sentencing that a gun can facilitate and embolden personal possession. When it's here, the facts show that the defendant was in a high crime area. It was late at night. He had just been in a police chase. He had been in a stolen car. And so that he could possess that gun to sort of embolden and protect and secure his personal possession of the drugs. I understand the government's theory, but there's nothing in the record that supports it except speculation, is there? Well, I wouldn't call it speculation. I would call it reasonable inferences based on the circumstances of the facts. Let me ask you this. Under what circumstances, it seems to be that if we adopt the government's view in this case, it's essentially a strict liability imposition of the sentence enhancement, because any time you have a gun close to possession of a drug, where it's pure possession, not held for sale, the enhancement applies. No, I think there would be or can be facts where an individual has a personal possession amount of drugs and a gun, and it's not to embolden or to secure personal possession. If it is 2 o'clock in the afternoon, he's going to, you know, the grocery store, and it's not a high crime area. There's not a ---- Well, isn't really the point that having a gun in that area of Oakland in the middle of the night, if anything, it just emboldens you to be there. It doesn't have anything to do with the drugs. I mean, it just seems to me there's two parallel things happening here. What's your response to that? Well, to have a gun at that time of night in Oakland, well, I guess the first thing is he was in a stolen car before this chase happens. He's in a stolen car with an individual who was also prosecuted for a drug trafficking offense. So the gun certainly ---- Well, but how does the guideline, how does the enhancement read? Doesn't it have to be in connection with the felony offense, which here is possession of a small amount? In this case, it is the enhancement applies to the felony possession of drugs. Your Honor's question that having a gun in that part of Oakland at that time of night is, I guess, necessary just based on the potential for harm or robberies or just self-defense in general. Well, you're the one who raised the high crime aspect of it as the definitive fact. I mean, I recognize under some circumstances you might have some testimony where it says I always keep a gun to protect my stash. I mean, that's a different situation. But here you don't have any of that testimony. What you have is a charge of simple possession and a proximity to the gun. So aside from ---- and what you say is in a high crime area. So is that all we have to impose the enhancement here? We just have to operate inferentially from that? The court does have to operate inferentially here. I think there's more than just the fact that it's a high crime area. It's the activities that he was engaged in at that time. He's in a stolen car. But the problem is that the connection under the enhancement has to be with the felony. So I'm just not sure how that matters. I mean, we have a lot of cases about the in connection with, as you know, where somebody's, like, sleeping and the gun's over here and you got ---- might be dealing or you're worried somebody's going to come into your house and they're dealing. So all those we make fine lines. But here we would have to say that simply having a gun when you had possession of drugs, it's always in connection because you do want to make sure nobody steals your personal stash, right? I mean, that's ---- it would almost, as Judge Thomas says, be a per se rule, wouldn't  Well, there have to be circumstances in which the person possessing the drugs and the gun may reasonably expect to be robbed of his personal possessions. So I think the fact that this is a high crime neighborhood, not simply a high crime neighborhood, but it's a high crime neighborhood at 345 in the morning, so in the middle of the night, there is an inference that one has to be more vigilant about protecting his personal stash of drugs given that factual scenario. It could have been perhaps the same neighborhood at 3 o'clock in the afternoon with lots of people in the street and kids coming and going from school where there is not the same concern that you have to protect yourself from some ---- an armed robbery or something of that nature. I think the facts of this case, middle of the night, high crime neighborhood, with his personal possession of cocaine base and the pistol, the court properly applies the enhancement. Well, and isn't it even further? I guess counsel, it was high crime rate, middle of the night. He had come out of a stolen car with drugs on his possession, and then he didn't ---- the district court find that he threw the gun in the bush. Doesn't that raise a further inference that it was connected? I would agree with that, yes. But the government discounted that theory of sentencing. Discounted the ---- The fact that it was related in all to the stolen vehicle. Well, the district court, I think, signaled that the felony that it was going to apply the enhancement to would be the personal possession of the drugs. And so the government focused its argument on possession of drugs being the felony. Right, because the government said, no, no, the felony that's charged, the actual possession in this case of the .23 grams. And that's after the court asked, were you facilitating the commission of a trafficking offense by the driver or by the stolen vehicle? So at sentencing, the government discounted the theory that or denied the theory that he was relying on the stolen vehicle or the trafficking that may have occurred ahead of time. I mean, I can understand why the government might have wanted to assert that theory of sentencing, but it didn't. I mean, it's just a possession. The government argued that the gun was used in connection with the personal possession of the drugs. With respect to the trafficking offense, that was obviously discounted because we didn't charge Mr. Hunt with trafficking. We didn't show a connection between the driver and the passenger. How do we know what the district court actually did? That's another concern I had. He says, well, I'm going to find that the question of whether the gun is in connection with the felony conviction, I think it was. And then all he says is, I think the factual circumstances I've heard are enough to establish a connection. Well, we've had all kinds of factual circumstances ranging from the theft of the car, all kinds of things. We actually don't have the district court advancing or adopting your theory, do we? I think that the – did the district court make an explicit factual finding as to the enhancement, the 2K2.1 enhancement? I think that the transcript can be read as the district court adopting the government's arguments as to the government's position as to the facts. That's pretty generous. We're optimistic maybe on your part. How do you get that out of, I think it was? Well, there was a colloquy between the government lawyer and the court when discussing the sort of facilitation, emboldened facts as to the government's position. So I think it was several pages long. The court first discounted this idea, the trafficking of the stolen car. They sort of narrowed down on the sort of keeping safe and secure the personal possession of the drugs with the gun. And then the court says I, in that sort of brief clip, that I think the facts are sufficient here. Now, you understand, this was district court that was intimately familiar with the facts of this case. And failed to make the factual finding. That's the problem. I mean, the problem I have, and I don't want to quibble about it, but Congress in the sentencing guidelines, you didn't have to use the phrase in connection with. The sentencing guidelines said if you have a gun and if you have a charge of possession, that's enough for enhancement. But the phrase in connection with is there. And aside from the fact that it's a high crime area, the rest is inferential. And that's difficult for me to, it presents a problem for me. Because otherwise I think we water down that language to nothing. It's just a simple strict liability. If you have a gun and you have drugs, possess drugs at the same time, that's in connection with it. I don't think we can stretch the guidelines that far. I know that I've exceeded my time here. I don't want to go. But I've rambled on. You have a chance to respond. Well, the question here is whether the district court committed clear error in its admittedly thin factual findings at the sentencing hearing. This is not a case simply where you have a drug and guns together. You have drug and guns together, 345 in the morning, high crime area, following a, hopping out of a stolen car, running from the police. So all those, the totality of those circumstances, I think, warrant the enhancement applied by the district court in this case. Would you agree that if we couldn't divine that very nicely stated reasoning that you just set out, that a remand would be appropriate to let the district court make whatever findings can be made from the record? I would agree that, well, I would first say I think the record is sufficient as is, but if the court were to remand, I think the district court could very easily set forth its factual findings as to why he applied the enhancement in this case. Right. I guess the question is if we found the factual findings that the court made insufficient, an insufficient basis toward the enhancement, would the government's position be that the case is over or it ought to be remanded for refinement of the factual findings? With the – if you find the factual findings are not sufficient for the enhancement, I would believe the case would have to be remanded for the district court to make a record as to the enhancement. Okay. Thank you. Thank you. I'll give you two minutes for rebuttal. Thank you. I may not need that. I would just like to remind the Court that the appellees have conceded the issue that the conviction for the minor drug offense is a misdemeanor and it has to be remanded anyway for resentencing. So it would make sense to have the Court at that time deal with its factual findings on that issue as well. As the Court has pointed out, the judge's factual findings that he did make find a connection with the felony conviction, which doesn't exist. So it indicates that the Court was confused and would need to make appropriate factual findings. Well, to me it might make a difference. If the Court makes a factual finding that it's in connection with the stolen car and all the circumstances, that may be one thing. If it's just that it's a, I found him and he had, he possessed the gun when he, or I found that he possessed the drugs when he was, when he had a gun, that's maybe not. So it's hard to know what the district, for me, it's hard to determine what the district court was actually doing. Agreed. Let me just, you said the drug possession. You agree the drug possession of this cocaine in California is a felony, correct? It's a felony in some States. It's a felony. It's a misdemeanor in other States. It's a misdemeanor in Federal court. But, yes, Your Honor, it is a felony in California. But I'm not sure that it is appropriate when, you know, the government had the opportunity to allow Mr. Hunter to be prosecuted in State court where it would have been a felony. The government chose to prosecute him here in Federal court where it's a misdemeanor to now say, well, we don't really like the fact that it was a, you know.   Well, I would argue that the misdemeanor is a connection to another felony offense. Is that correct? And specific language of the guidelines is it could be a State or Federal felony. Right. But I would argue as well that Apprendi would say if it's a felony conviction, you would have to prove up that felony conviction. And in this case, there wouldn't be a felony conviction. It was prosecuted in a jurisdiction where that is not a felony. We could travel around the country every time, you know, a prior comes up and see if there's a particular State that would make it a felony or a misdemeanor. I don't think any of us want to go down that road. No, this is a pure question. Here's California. It's whether it's California State law that makes it Federal law. We don't have to travel anywhere, do we? He was arrested here for a crime within the Northern District of California. And he could have been prosecuted in California, and he was prosecuted. He couldn't have been prosecuted for that in, say, Michigan or Nebraska or Montana, right? No, that's true. But I agree. But he was in State court, and the Feds went and brought him out of State court and decided they didn't want the felony. They wanted to prosecute him as a misdemeanor. And I also want to remind you. So prosecutorial leniency is grounds for imposing an enhancement? Well, it's their choice. And I want to remind the Court that they didn't file this drug case until a few days before trial, and they had the opportunity at that point to file priors, file whatever it is they wanted to do to make it into a felony, and they chose, and they did not give it, which it's not leniency. It doesn't give the defendant the due process and the time necessary to defend such a case if they're not going to charge it. They don't charge it as a felony. They don't charge the priors. And they wait until the very last minute to charge the misdemeanor. Erroneous. Well, I take your point, but basically you're faulting them for undercharging your client? No, I'm not admitting they undercharged my client. Or leaving him in State court where he definitely would have had a felony. But the sentencing is far less.  The sentencing would be more, but they chose a jurisdiction where, indeed, the crime of possession of a small amount of drugs is only a misdemeanor. Okay. Thank you. Thank you for your arguments. Those are some interesting questions. The case of United States v. Hunter will be submitted.
judges: Thomas, McKeown, Murguia